UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

JAY NYGARD and KENDALL NYGARD,      Case No. 21-CV-884 (NEB/JFD)

Plaintiffs,

v.                                        ORDER ON MOTION TO DISMISS

CITY OF ORONO,

Defendant.

---

Without first obtaining a permit, as the City of Orono requires, Jay Nygard replaced the driveway of an investment property that he and his wife, Kendall Nygard, own. After Nygard[1] attempted, but failed, to obtain a permit after the fact, the City prosecuted the Nygards for completing work without a permit. The judge dismissed Kendall Nygard from the case and found Nygard not guilty. The Nygards then brought this suit, challenging both the ordinance under which the City charged them and also the prosecution itself. The City moved to dismiss. For the reasons that follow, the Court grants the motion.

---

[1] The Court uses "the Nygards" to refer to both plaintiffs. It uses "Nygard" to refer to Jay Nygard, the landowner who completed the work and corresponded with the City. It uses "Kendall Nygard" to refer to Plaintiff Kendall Nygard, who is Jay Nygard's wife and the joint landowner.

## BACKGROUND

Nygard wanted to replace his driveway, and so he did. But he did not first obtain a permit from the City of Orono, where his land is located. In Orono, as in most cities, it is unlawful to complete work without obtaining a permit if the city ordinances require one. Orono, Minn., Code § 86-37(1). Orono city ordinance section 86-66 requires a permit for constructing a building or structure, altering land, or installing hardcover.[2] *Id.* § 86-66. Under Section 86-66, a landowner must obtain a building permit to "erect, construct, enlarge, alter, repair, move, improve, remove, convert, or demolish any building or structure." *Id.* § 86-66(a). Even if a *building* permit is not required, a *zoning* permit may be. Under Section 86-66(b), a landowner must obtain a zoning permit before "conducting any land alteration or hardcover installations on a property." *Id.* § 86-66(b). If a landowner completes work for which a permit is required without obtaining one, he or she must obtain a permit or remedy the violation within thirty days after receiving notice from the City. *Id.* § 86-36. Failure to follow these rules results not merely in a fine: it is a misdemeanor criminal offense. *Id.* § 86-42.

---

[2] Hardcover is "a hard surface that prevents or [slows] entry of water into the soil and causes water to run off the surface in greater quantities and at an increased rate of flow than prior to development," and includes garages, driveways, sidewalks, and patios, among many other things. City of Orono, *Hardcover Information*, (Jan. 2021), https://ci.orono.mn.us/DocumentCenter/View/2755/Hardcover-Information-Packet-2021-pdf; Orono, Minn., Code § 78-1683.

The Nygards jointly own an investment property in Orono. (ECF No. 1 ("Compl.")) ¶¶ 3–4.) When Nygard determined he wanted to replace the driveway, he researched whether he needed a permit to do so and concluded that he did not. (*Id.* ¶¶ 6, 8–9.) Soon after, Nygard removed the driveway and was ready to begin pouring concrete for the new one. (*Id.* ¶¶ 10, 13.) Before he started, however, a City inspector arrived at the property and told Nygard that he needed a permit. (*Id.* ¶ 13.) Nygard told the inspector that he would apply for one, and the inspector left without issuing a stop work order. (*Id.* ¶¶ 16, 18.)

The next day, after completing the driveway work, Nygard applied for a permit. (*Id.* ¶ 22.) Nygard's application included an aerial photo of the property. (*Id.* ¶ 24.) On it, he labeled the portion of hardcover that he had removed, outlined the new driveway, and referenced an area unrelated to this dispute but relevant to another: footings for a wind turbine. (*Id.* ¶¶ 24, 26; *see also* ECF No. 13-3.) Nygard alleges that he referenced the wind turbine footing for informational purposes and to address the City's possible concerns about the property's total hardcover area.³ (Compl. ¶ 24.)

---

³ The Nygards previously sought a permit to install a wind turbine on their own property (adjacent to the investment property), which Orono rejected. *City of Orono v. Nygard*, No. A16-1618, 2017 WL 1548628, at *1 (Minn. Ct. App. May 1, 2017). The Nygards sued the City, and the Minnesota district court granted summary judgment for Orono and ordered the Nygards to remove the wind turbine. *Id.* The Nygards failed to comply, so the district court found them in contempt of court and again ordered them to remove the wind turbine. *Id.* Even still, the Nygards refused. *Id.* After an unsuccessful appeal, the Nygards removed the wind turbine but would not allow the City onto their property to verify that they had also removed the turbine's concrete pad and footings. *Id.* at *2. The

The City did not approve the permit. Instead, it sent Nygard a "Builder Acknowledgment Form" ("BAF") to sign before the permit could be approved (*Id.* ¶ 28; ECF No. 1-1 ("Compl. Ex."), Ex. 1.) The BAF listed several "conditions," including that the new driveway "should be" at least one and five-eighths inches above street level, that the former driveway's nonconforming width could remain, that the wind turbine footing was not permitted, and that the hardcover calculations (which the City did not request) should include a sidewalk from the driveway to the front door. (Compl. ¶ 30; Compl. Ex. 1.) Orono also returned Nygard's aerial photo, on which it crossed out the wind turbine footing and wrote, "Turbine Footing not permitted." (ECF No. 13-4.)

Nygard disputed several of these conditions, as well as the notion that he needed a permit at all. (Compl. ¶ 33; Compl. Ex. 2.) Nygard crossed off the conditions that he disagreed with, initialed the remaining conditions and comments, and sent the BAF back to the City. (Compl. ¶¶ 38–42; Compl. Ex. 3.) The City responded, explaining the conditions to Nygard and telling him that it would issue a permit once he had accepted all the conditions in the BAF and the annotated aerial photo. (Compl. ¶ 43; Compl. Ex. 4.)

Nygard continued to contest the permit conditions. (Compl. ¶ 57; *see also* Compl. Exs. 5–7.) The City reaffirmed that it would only issue the permit if Nygard agreed to sign off on the conditions in the BAF. (Compl. ¶¶ 59–60; Compl. Ex. 8.) There is no

---

district court again found the Nygards in contempt of court and ordered Nygard to prison until submission of evidence that the Nygards were in compliance, which his wife provided a few days later. *Id.*

4

allegation that the "conditions" required Nygard to complete any additional work on the driveway. To the contrary, the City told Nygard that it would issue the permit that same day if Nygard acknowledged the conditions and paid the fee. (Compl. Ex. 8.) The City threatened "possible legal action" if he did not comply. (*Id.*) Nygard continued to refuse to acknowledge the conditions, and the City continued to refuse to issue the permit. (Compl. ¶ 62.)

Finally, about eight weeks after Nygard poured the new driveway, a City official told the City prosecutor to charge both Nygards with violating Section 86-66(b) for having completed work without a permit. (*Id.* ¶ 89; Compl. Ex. 9.) The City charged the Nygards in state court with misdemeanor violations. (Compl. ¶ 105; Compl. Ex. 11.) At trial, the judge dismissed Kendall Nygard, finding that she could not be liable for violating Section 86-66(b) simply by being an owner of the property, and she was not otherwise involved in the installation of the new driveway. (Compl. ¶¶ 108–09.) The judge found Nygard not guilty, determining that the City had no basis to require a permit. (*Id.* ¶¶ 110–11.)

The Nygards then brought this suit against the City in federal court. The Nygards allege that Section 86-66 is void for vagueness, that the City retaliated against them for First Amendment activities, and that the City abused process and maliciously prosecuted them. (*Id.* ¶¶ 152–250.) The Nygards also seek declaratory and injunctive relief requiring the City to issue a permit for the replacement driveway. (*Id.* ¶¶ 274–75; *id.* at 41.)

5

## ANALYSIS

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires the Court to dismiss a complaint if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When reviewing a Rule 12(b)(6) motion, a court must "tak[e] all facts alleged in the complaint as true, and mak[e] reasonable inferences in favor of the nonmoving party." *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014). Although the factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, where a complaint alleges "facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief'" and the Court must dismiss it. *Id.* (quoting *Twombly*, 550 U.S. at 557).

### I.     Void for Vagueness

The Nygards bring two separate void for vagueness claims—one for each prong of the void for vagueness analysis. (Compl. ¶¶ 152–62 (Counts I and II).) A law is unconstitutionally vague if it (1) "fails to give ordinary people fair notice of the conduct

6

it punishes" or (2) is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015) (citation omitted). A law need not define prohibited conduct with "mathematical certainty," nor must it provide "perfect clarity and precise guidance." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972); *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). A void for vagueness claim can be facial or as-applied. *United States v. Stupka*, 418 F. Supp. 3d 402, 405–06 (N.D. Iowa 2019); *see Gallagher v. Magner*, 619 F.3d 823, 840–41 (8th Cir. 2010) (analyzing both an as-applied and a facial void for vagueness challenge). The Nygards appear to be bringing both forms of challenges, and so the Court will analyze each.

   A. *Facial Challenge*

The Nygards' facial challenge is not brought on First Amendment grounds, making it generally disfavored under well-established law. *United States v. Turner*, 842 F.3d 602, 606 n.1 (8th Cir. 2016). Understanding this hurdle, the Nygards attempt to fit the facial challenge under the plurality opinion of *City of Chicago v. Morales*, 527 U.S. 41 (1999). In *Morales*, the Supreme Court allowed a facial void for vagueness challenge to a gang loitering ordinance when (1) the ordinance had no *mens rea* requirement; (2) it infringed on constitutionally protected rights; and (3) vagueness "permeated the text" of the law. *Id.* at 55.

But even post-*Morales*, the Eighth Circuit has been reluctant to allow facial vagueness challenges that do not implicate First Amendment rights. It has repeatedly

7

reaffirmed that non-First-Amendment void for vagueness challenges should be analyzed as applied to the plaintiff's conduct. *E.g.*, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1015–16, 1021 (8th Cir. 2012) (rejecting a facial vagueness challenge, even when the ordinance at issue lacked a *mens rea* requirement) (internal quotations and citation omitted); *Musser v. Mapes*, 718 F.3d 996, 1000 (8th Cir. 2013) (noting that a vagueness challenge is "generally not" an exception to the rule that a person to whom a statute can be constitutionally applied cannot complain about the possible unconstitutional application of the statute to others) (citations omitted).

In contrast, the Court has not found a case in which the Eighth Circuit permitted a facial voidness challenge not implicating First Amendment freedoms. Several other circuits have concluded that they are not required to apply *Morales* or have refused to extend the plurality opinion. *See, e.g.*, *N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015) (explaining that the court is not required to apply *Morales* because the plurality opinion has not garnered the support of a majority of the Supreme Court); *Phelps v. Budge*, 188 F. App'x 616, 618 (9th Cir. 2006) (noting that "federal law does not clearly require a facial analysis of all criminal statutes" and refusing to apply *Morales* when the statute at issue did not implicate constitutional rights and was not permeated with vagueness); *United States v. Cook*, 970 F.3d 866, 873 (7th Cir. 2020) (theorizing that the Supreme Court only permits non-First-Amendment facial voidness challenges when

8

the law at issue "simply has no core" and lacks "any ascertainable standard for inclusion and exclusion") (citations omitted).

Even assuming the validity of the *Morales* approach, the Nygards' vagueness challenge does not meet *Morales*'s criteria for a facial challenge. Most notably, any potential vagueness associated with Section 86-66 pales in comparison to the vagueness of the ordinance at issue in *Morales*. That ordinance failed to specifically define what conduct was prohibited—it criminalized loitering, which the ordinance defined as "remain[ing] in any one place with no apparent purpose." *Morales*, 527 U.S. at 56. Under that ordinance, a Chicagoan would be unable to tell whether he or she had an "apparent purpose." *Id.* at 56–57. The ordinance "added a subjective gloss to the normal meaning of the word 'loiter'"—whether one was loitering "depend[ed] upon an element that can vary with the eye of the beholder." *Agnew v. District of Columbia*, 263 F. Supp. 3d 89, 97 (D.D.C. 2017). Section 86-66, if vague at all, does not come close to being as standardless as the *Morales* ordinance. *See infra* Section I.B (explaining that Section 86-66 clearly defines prohibited conduct and does not lend itself to arbitrary or discriminatory enforcement). Vagueness does not permeate the text of Section 86-66, so the Nygards cannot bring a facial vagueness challenge.

### B. As-Applied Challenge

Because the Nygards' facial void-for-vagueness challenge fails, the Court must examine the challenge "in the light of the facts of the case at hand"—in other words, as

9

applied to the Nygards. *Gallagher*, 699 F.3d at 1021 (internal quotations and citation omitted). Someone who "received fair warning of the criminality of his own conduct from the statute in question" is not entitled to attack it because another person who engages in different conduct might not receive fair warning from the statute's language; "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756 (1974).

The as-applied challenge queries whether the ordinance permits the City to make "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Metro. Omaha Prop. Owners Ass'n, Inc. v. City of Omaha*, 991 F.3d 880, 887 (8th Cir. 2021) (citing *Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010)). The Court concludes that it does not. Rather, even accepting the Nygards' factual allegations as true, as the Court must, the ordinance proscribes Nygard's conduct. It requires an individual to submit a zoning permit application before completing any land alteration or hardcover[4] installations on a property. Orono, Minn., Code § 86-66(b). Nygard did not apply for a permit before altering his land and installing hardcover, nor did he obtain a permit after the fact. (*See* Compl. ¶¶ 13–16, 112.) The ordinance is definite enough to give a person of ordinary intelligence notice of what is prohibited.

---

[4] The Nygards do not specifically argue that the term "hardcover" in Section 86-66 is vague, but if they did, this argument would fail. Other Orono ordinances define what is and is not considered hardcover. Orono, Minn., Code §§ 78-1683, 78-1684. Orono has also prepared an information sheet that defines "hardcover" and gives examples of what is included, one of which is a driveway. *Hardcover Information*, *supra* note 2.

10

Additionally, because the ordinance clearly defines what is prohibited, it does not lend itself to arbitrary or discriminatory enforcement, contrary to Count II's allegations. The Nygards contend that the ordinance "confer[s] unlimited discretion on law enforcement authorities" because "almost everybody would do something that arguably violated the ordinance." (ECF No. 16 at 17–18.) Not so. An Orono resident only violates Section 86-66 if he or she fails to obtain a permit before doing one of the things enumerated in the ordinance. *See Metro. Omaha*, 991 F.3d at 887 (holding that an ordinance was not void for vagueness when the city "may penalize property owners only for violations of applicable laws, rules, and regulations"). Further, the things one cannot do without a permit are clearly enumerated. One cannot "erect, construct, enlarge, alter, repair, move, improve, remove, convert, or demolish any building or structure," without a building permit, and one cannot alter land or install hardcover without a zoning permit. Orono, Minn., Code § 86-66. The replacement of a driveway easily falls within the alteration of land or installation of hardcover. As applied to driveway replacement, Section 86-66 is not so standardless as to lend itself to arbitrary or discriminatory enforcement. The Nygards' void for vagueness challenges fail as a matter of law.

## II.   First Amendment Retaliation

Count III of the Complaint is a First Amendment retaliation claim under Section 1983. (Compl. at 2.) As the Nygards noted at the hearing, this is a *Monell* claim. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Under *Monell*, a municipality can only be liable for

11

a constitutional violation based on "(1) an official municipal policy; (2) an unofficial custom[;] or (3) failure to train or supervise." *Robbins v. City of Des Moines*, 984 F.3d 673, 681–82 (8th Cir. 2021) (citation omitted). In other words, a municipality is only liable for constitutional violations resulting from "decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted).

The Nygards have not sufficiently alleged a *Monell* claim. Their claim depends solely on the City's determination to prosecute them. (Compl. ¶ 186.) The Complaint contains no allegations that this allegedly retaliatory prosecution resulted from the City's official policy, unofficial custom, or failure to train or supervise its staff.[5]

At the hearing, the Nygards argued that their *Monell* clam should stand because Jeremy Barnhart, the City official who requested that the City attorney prosecute the Nygards, is a "final decision-maker" for the City. A single unconstitutional incident is not sufficient to bring a *Monell* claim, but an unconstitutional policy may be inferred "from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *Davison v. City of Minneapolis*, 490 F.3d 648, 659 (8th Cir. 2007) (internal quotations and citation omitted). Under this principle, the official in

---

[5] As the Nygards rightly point out, (ECF No. 16 at 19), they need not plead the buzzwords "policy" or "custom." But even if they do not use those specific words, they are not excused from their obligation to "allege facts which would support the existence of an unconstitutional policy or custom." *Doe ex rel. Doe v. Sch. Dist. of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003) (citation omitted).

question must be "responsible for establishing final government policy respecting such activity." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986).

The Nygards have not plausibly alleged that Barnhart sets "final government policy" regarding prosecuting citizens for violating Orono ordinances. Regarding Barnhart, the Nygards have alleged that he is the "City of Orono Community Development Director," (Compl. ¶ 59), that he communicated with Nygard about the permitting process, (*id.* ¶¶ 59–61, 84–85), that he was familiar with the City's code and the circumstances around Nygard's application specifically, (*id.* ¶¶ 63–83), and that he told the prosecutor to charge the Nygards, (*id.* ¶ 89). Nothing in these allegations raises the inference that Barnhart sets municipal policy.

Nor is it enough that Barnhart instructed the Orono prosecutor to charge the Nygards. A municipal official may have the power to do something without being the "official responsible for establishing [municipal] policy" as to that action. *Pembaur*, 475 U.S. at 483 n.12. Barnhart could have had the power to instruct the prosecutor to charge the Nygards without being the policy-setting official regarding Orono Code violations. *Id.* Because the Nygards have not met the requirements to allege a *Monell* claim, their Section 1983 claim against the City fails.

### III. Abuse of Process

Without a constitutional claim, the Nygards are left with two tort claims and a claim for a declaratory judgment. They are understandably frustrated with the City's

13

actions. From the Nygards' view, the City allowed them to complete a driveway and then refused to issue a permit for it unless Nygard signed off on certain "conditions." The question for the Court is not whether the City's actions were frustrating, or even unfair—rather, it is whether the allegations are sufficiently tethered to the elements of the tort claims under Minnesota law.

For their abuse of process claim, the Nygards must have alleged that the City used a "process to accomplish a result not within the scope of the proceedings in which it was issued" and that the City had an ulterior motive. *Dunham v. Roer*, 708 N.W.2d 552, 571 (Minn. Ct. App. 2006) (citing *Kellar v. VonHoltum*, 568 N.W.2d 186, 192 (Minn. Ct. App. 1997)). "Process," in the context of this tort, is meant in a narrow sense. It refers to "the proceedings in any action or prosecution; a summons or writ, [especially] to appear or respond in court." *Eclipse Architectural Grp., Inc. v. Lam*, 814 N.W.2d 692, 697 (Minn. 2012) (citation omitted); *Leiendecker v. Asian Women United of Minn.*, 834 N.W.2d 741, 753 (Minn. Ct. App. 2013) (using the *Eclipse* definition of "process" for an abuse of process claim), *overruled on other grounds by* 848 N.W.2d 224 (Minn. 2014). The act of initiating a lawsuit cannot be the basis for an abuse of process claim. *Leiendecker*, 834 N.W.2d at 753. The basis must be the misuse of a specific mechanism of litigation—process. *See id.*; Restatement (Third) of Torts § 26 cmts. a–c (2020). The only process the Nygards allege that the City abused is the permitting process, including the use of the BAF. (Compl. ¶¶ 216–31.) For example, the Nygards allege that the City "abused its BAF process by including in the

14

BAF form, prepared for Jay Nygard's permit application, certain 'permit conditions' city officials knew were not applicable." (Compl. ¶ 219.)

Although the permitting process is a "process" in the broad sense of the word, it is not the type of "process" at which the abuse of process tort takes aim. *See Surgidev Corp. v. Eye Tech., Inc.*, 625 F. Supp. 800, 805 n.4 (D. Minn. 1986) (applying Minnesota law and dismissing an abuse of process counterclaim when there were no allegations that the plaintiff "misused discovery or other court process"); *Imholte v. US Bank, Nat'l Ass'n*, No. 19-CV-1627 (DWF/DTS), 2020 WL 362790, at *4 (D. Minn. Jan. 22, 2020) (applying Minnesota law and dismissing an abuse of process claim when the plaintiff failed to allege that the defendant misused the court's process). The Nygards have failed to state an abuse of process claim.

### IV.     Malicious Prosecution

To prevail on their malicious prosecution claim, the Nygards must allege (1) that the City brought the prosecution without probable cause; (2) that the City initiated and prosecuted it with malicious intent; and (3) that the Nygards prevailed in the action. *Dunham*, 708 N.W.2d at 569 (citing *Kellar*, 568 N.W.2d at 192). The Nygards have alleged that the prosecution was brought and prosecuted maliciously, and they have also alleged that the action terminated in their favor. (Compl. ¶¶ 241–44.) The only question, then, is whether they have plausibly alleged that the City brought the criminal action without probable cause.

15

For a malicious prosecution claim, a judge's finding of probable cause negates a claimed lack of probable cause. Restatement (Third) of Torts § 22 cmt. e (explaining that if a judge considered the evidence and determined that probable cause existed, the person or entity bringing the charge could have been "no more [wrong] than the judge," and that finding defeats civil liability); *cf. Polzin v. Lischefska*, 204 N.W. 885, 885 (Minn. 1925) (noting that a grand jury indictment is *prima facie* evidence of the existence of probable cause). A Minnesota state court judge determined that there was probable cause to charge the Nygards with violating Section 86-66 of the Orono Code, thus negating their malicious prosecution claim. (ECF No. 15 at 4, 10 (ECF pagination).[6])

Further, the Nygards have alleged facts that support the existence of probable cause as to Jay Nygard. Nygard replaced his driveway without a permit. (Compl. ¶¶ 10, 13–16.) He did not obtain a permit after the fact. (*Id.* ¶ 112.) Based on Nygard's installation of hardcover without a permit, Orono had "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief" that Nygard violated Section 86-66. *Allen v. Osco Drug, Inc.*, 265 N.W.2d 639, 643 (Minn. 1978) (internal quotations and citation omitted).

As to Kendall Nygard, who did not complete any of the work on the driveway and who was not present when the work was done, the City argues that she could be liable

---

[6] The Court may consider matters of public record, such as state court documents, without converting the motion to dismiss into one for summary judgment. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

for the work done without a permit based on Section 86-36 of the Orono Code. That section requires an "owner and/or occupant" of a property on which work has been done without a permit to obtain a permit or remedy the violation within thirty days. Orono, Minn., Code § 86-36. Kendall co-owns the property at issue, subjecting her to possible liability for failing to obtain a permit. (Compl. ¶ 4.) While the case against Kendall Nygard was ultimately dismissed, the dismissal was not for lack of probable cause. (*Id.* ¶ 108); *see Neudecker v. Shakopee Police Dep't*, No. 07-CV-3506 (PJS/JJG), 2008 WL 11463478, at *3 (D. Minn. Mar. 25, 2008) ("The probable cause determination in a malicious prosecution claim should be based upon the decision to charge, not the result of the case, unless the specific issue of probable cause is adjudicated.") (citing Minnesota appellate court cases).

Even assuming the truth of the Nygards' factual allegations, as the Court must, the Court cannot conclude that the prosecution was without probable cause—particularly because a state court judge found probable cause to go forward with the case. Thus, the Nygards' allegations of lack of probable cause, which relate to a legal conclusion, are insufficient to survive a motion to dismiss.[7]

---

[7] Because the Court dismisses the Nygards' tort claims for failure to state a claim, it does not consider the City's immunity arguments.

V.     **Declaratory Judgment**

Although the Nygards bring a declaratory judgment claim, both parties agree that a declaratory judgment is a remedy. (ECF No. 12 at 32; ECF No. 16 at 28.) But because the Court dismisses the Nygards' substantive claims, they are left with a "remedy in search of [a] right." *Wolff v. Bank of N.Y. Mellon*, 997 F. Supp. 2d 964, 979 (D. Minn. 2014) (internal quotations and citations omitted); *Corval Constructors, Inc. v. Tesoro Refin. & Mktg. Co.*, No. 19-CV-1277 (ECT/BRT), 2019 WL 5260483, at *5 (D. Minn. Oct. 17, 2019) ("[D]ismissal of a claim or request for a declaratory judgment is proper when there is no legal basis underlying the claim or request."). Thus, the Court dismisses the Nygards' declaratory judgment claim.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The City of Orono's motion to dismiss (ECF No. 10) is GRANTED; and

2. The Nygards' Complaint (ECF No. 1) is DISMISSED as follows:

    a. The void for vagueness claims (Counts I and II) and the malicious prosecution claim (Count V) are DISMISSED WITH PREJUDICE; and

    b. The First Amendment retaliation claim (Count III), the abuse of process claim (Count IV), and the declaratory judgment claim (Count VI) are DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 11, 2021						BY THE COURT:

								s/Nancy E. Brasel
								Nancy E. Brasel
								United States District Judge